Opinion by
Judge Mencer,
National Valve and Manufacturing Co. (National) is a fabricating concern which has three plants located in the vicinity of Pittsburgh. National employs three classifications of production employes who are enumerated as steamfitters, fabricators, and machinists. The fabricators bring the pipe and the fittings to the work benches where the steamfitters fabricate, weld, burn, and fit the pipe and fittings together. When the steamfitters have completed their job functions, the fabricators take the work item and paint, sand, and coat the pipe. Machinists grind, scale, and perform certain preparation work on the work item. The fabricators also operate the overhead cranes which move the pipe within the plant. This production process results in all three crafts being dependent on one another, all three crafts working as a team.
On June 1, 1972, members of Local Union No. 52 of the International Association of Machinists and Aerospace Workers (machinists) commenced a work stoppage *569 and picketed the premises of National. This strike was settled on July 14, 1972, and all workers returned to work by July 17, 1972.
Steamfitters Local Union No. 449 (fabricators) had a contract with National which expired May 31, 1972. The fabricators engaged in their own strike and picketing from June 5, 1972 through June 13, 1972, at which time their dispute was settled. The steamfitters were also members of Local No. 449 and working under a National Labor Management Agreement effective June 1, 1970 and having an expiration date of June 1,1973. This agreement contained a no-strike clause.
We are here concerned with the eligibility for unemployment compensation benefits of the steamfitters and fabricators, who are claiming employment benefits for the periods of June 1 through June 4, 1972 and June 22 through July 14, 1972. The steamfitters and fabricators assert that they were unable to reach their places of work during these periods of time because of threats of violence made against them by those members of the machinists’ union, Local No. 52, who formed the picket lines outside National’s plants. The Bureau of Employment Security denied benefits and invalidated the applications filed by steamfitters and fabricators. A referee reversed the Bureau of Employment Security and allowed benefits. The Board of Review, by a 2-1 decision, disallowed National further appeal and National filed this appeal.
The referee and Board of Review concluded that, since claimants did not personally participate in the machinists’ labor dispute in that their refusal to cross the machinists’ picket line was justified in the face of threats of violence against them, they were not disqualified from receiving benefits.
However, our examination of the record convinces us that the controlling question in this appeal is whether claimants belong to the same grade or class of workers as the machinists. This issue is one of law rather than *570 of fact and involves a question of statutory interpretation.
Section 402 of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P. L. (1937) 2897, as amended, 43 P.S. §802, provides in pertinent part that “ [a]n employe shall be ineligible for compensation for any week ... (d) [i]n which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed: Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute.”
Consequently, no person unemployed because of a labor dispute can recover unemployment compensation benefits unless he can prove that he is not of the same grade or class of workers as the strikers. Curcio Unemployment Compensation Case, 165 Pa. Superior Ct. 385, 68 A.2d 393 (1949). In Curcio, claimant was a production worker for Westinghouse Electric Corporation and a member of Local No. 201 of the AFL International Brotherhood of Electrical Workers. Local No. 634, CIO United Electrical, Radio and Machine Workers, which also had members employed at the same plant, went on strike to compel the employer to recognize Local No. 634 as the exclusive bargaining agent for all employes. By reason of a picket line set up by Local No. 634, claimant was prevented from entering the plant. It was held that claimant was ineligible for benefits because he belonged to the same grade or class of workers as the strikers, not *571 withstanding the fact that he was not a member of the striking union. The rationale of the Curdo decision was simply that while the duties of the various employes differed in detail, yet they were all production workers involved in the manufacturing of electrical equipment in the plant of their employer.
In Stahlman Unemployment Compensation Case, 187 Pa. Superior Ct. 246, 144 A. 2d 670 (1958), the Dravo Corporation was engaged in the heavy construction industry and in its business employed workmen from four different crafts who were members of four separate unions. The Superior Court held that all of the claimants (carpenters, operating engineers, and teamsters), although with differences in their duties, were of the same class as the striking members of the laborers’ union and therefore all were disqualified under Section 402(d) of the Unemployment Compensation Law, as amended, 43 P.S. §802 (d).
In Oliver Unemployment Compensation Case, 189 Pa. Superior Ct. 362, 150 A. 2d 361 (1959), there was a reversal of the board of review as a matter of law. In that case the work done in the steel mill involved was “a continuous integrated production process.” There the stoppage resulted when a group of employes engaged as pilers stacking the finished product stopped work because of a dispute over the revision of an existing wage incentive plan, and it was held that production workers rolling steel were of the same class as the striking pilers and were disqualified on that ground under Section 402(d).
In Rusynko Unemployment Compensation Case, 191 Pa. Superior Ct. 434, 156 A.2d 576 (1959), the claimant was employed as a “slipmaker” and his duties involved the final operations in the processing of steel into structural members of specified lengths, weights, and shapes. Uninterrupted work in claimant’s department was dependent on the continuous flow of material through integrated processes from ingot material to all but the finished product. A small group of employes whose duty was the prep *572 aration of the ingots went out on an unauthorized strike and this caused a number of production and maintenance employes to be idled and claimant’s department was closed down. The striking workmen were members of the same union as all other employes, including the slip-makers, involved in the production of structural steel. The Superior Court held, as a matter of law, that claimant belonged to the same grade or class of workers as the striking workmen and for that reason Section 402 (d) of the Unemployment Compensation Law made them ineligible for benefits.
In the case at bar the referee found that the fabricators and steamfitters knew that they could not perform their regular duties without the machinists being present. This finding was clearly supportable on the record which repeatedly reveals that even though the duties of the steamfitters, fabricators, and machinists differed in detail, they were all engaged in the direct chain of production of the ultimate product manufactured by National and could not work and perform their duties without the services of each other.
Here the facts compel the single conclusion that the work performed by members of the three crafts employed by National involved a continuous integrated production process. The progressive activities and job functions of the three groups of employes were so closely related that it was not possible for the production line to continue operation unless the work of each group was being performed. Without the machinists present, the fabricators and steamfitters could not perform their regular duties.
The decision of the referee, from which a divided Board of Review disallowed National further appeal, is predicated upon a conclusion that claimants here “were not members of Local 52 and were not of the same grade or- class of the machinists.” On this record, and in consideration of the decisions herein cited, this conclusion is erroneous.
Accordingly, we make the following
*573 Order
Now, this 9th day of June, 1975, the orders of the Unemployment Compensation Board of Review, dated June 12, 1974, relative to the representative claims of Frank J. Renda and Robert P. Manion, are reversed.